UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| LEMUEL R. BELL,<br><br>Plaintiff,<br><br>vs.<br><br>WARDEN TERESA BITTINGER, SDSP Jameson Annex in her official capacity; MEDICAL DEPT., Medical Provider at SDSP Jameson Annex in their official capacity; MEDICAL DEPT., Medical Provider at SDSP Unit C in their official capacity; and MEDICAL DEPT., Medical Provider at SDSP The Hill in their official capacity,<br><br>Defendants. | 4:24-CV-04152-LLP<br><br>MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS, DENYING PLAINTIFF'S OTHER VARIOUS MOTIONS, AND 1915A SCREENING |

Plaintiff, Lemuel R. Bell, filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. He filed a motion for leave to proceed in forma pauperis and a copy of his prisoner trust account report. Docs. 2, 3. He also filed a motion to commence and for summary judgment, Doc. 7; a motion to appoint counsel, Doc. 9; a motion to proceed, Doc. 10; and a motion to change venue, Doc. 11.

**MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

At the time Bell filed his complaint and his motion for leave to proceed in forma pauperis, he was incarcerated at the Minnehaha County Jail. Doc. 1 at 1; Doc. 2 at 4. *But see* Doc. 2 at 1 (stating that Bell was imprisoned at the Jameson Annex). Bell was released from custody before this Court ruled on Bell's motion for leave to proceed in forma pauperis. Doc. 12.

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Circuit courts are split on whether the filing fee provisions of the PLRA

continue to apply after a prisoner is released during litigation. *See Carson v. Tulsa Police Dep't*, 266 F. App'x 763, 766–67 (10th Cir. 2008) (describing split in authority); *Domino v. Garland*, 2021 WL 1221188, at *1 n.3 (D. Minn. Apr. 1, 2021). The Eighth Circuit has not expressly weighed in on this issue. But district courts have found *In re Tyler*, 110 F.3d 528, 529 (8th Cir. 1997), instructive in holding that the PLRA continues to apply because "if a prisoner filed the action while in custody, the prisoner remains liable for the filing fee even if they are later released from custody." *Bell v. Mattson*, 4:24-CV-04179-KES, 2025 WL 1249453, at *2 (D.S.D. Apr. 30, 2025); *Hilston v. Lincoln Cnty. Cir. Judges*, 4:24-CV-04154-KES, 2025 WL 1068584, at *2 (D.S.D. Apr. 9, 2025) (collecting cases). *But see Clark v. Wood*, 2021 WL 1873561, at *1 (E.D. Mo. May 10, 2021).

Under the PLRA, the Court may accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Bell filed a motion to proceed in forma pauperis. Doc. 2. His prisoner trust account report shows his average monthly deposits to be $34.48 and his average monthly balance as $3.13. Doc. 3 at 1. Because Bell would owe more than his current balance as his initial partial filing fee, the Court grants Bell leave to proceed in forma pauperis and waives his initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . .

2

for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Bell must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the Court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at plaintiff's institution. Bell will remain responsible for the entire filing fee, as long as he is a prisoner, even if the case is dismissed at some later time. *See In re Tyler*, 110 F.3d at 529–30.[1]

## 1915A SCREENING

### I.     Factual Background as Alleged by Bell

On February 19,[2] Bell was diagnosed with cancer. Doc. 1 at 4. Between February 27 and March 20[3] Bell submitted three medical records release forms to continue his cancer treatment.

---

[1] Courts have identified that as a practical matter, the filing fee provisions of § 1915(b)(2) cannot be implemented at this time when the plaintiff is no longer a prisoner, but if he ever returns to custody, § 1915(b)(2) may become applicable. *See Domino*, 2021 WL 1221188, at *2 n.4; *McFee v. Minnesota*, 2012 WL 514708, at *3 n.6 (D. Minn. Jan. 24, 2012).

[2] It is unclear from Bell's complaint whether he was diagnosed in 2022 or 2023, Doc. 1 at 4, but a document submitted with one of Bell's motions makes it clear that he was diagnosed in 2023, Doc. 8 at 1.

[3] Bell's complaint is dated August 19, 2024. Doc. 1 at 7. Thus, it is unclear from Bell's complaint whether some of the alleged events occurred in 2023 or 2024. *See id.* at 4–6. It appears from a document submitted with one of Bell's motions that the events at the SDSP occurred in 2024. Doc. 8 at 1.

3

*Id.* Medical staff told Bell that he was lying about his condition, but in April, an ultrasound was performed, which showed a large mass. *Id.* Medical staff told him that the mass had a low chance of being cancer. *Id.* When Bell said that he needed a surgical consultation, medical staff informed him that he was scheduled with an outside provider. *Id.* Bell continued to report that he was in pain, but he was not provided any treatment or pain medication. *Id.* He filed several informal resolution requests (IRRs) seeking treatment, but the only responses he received stated that he was scheduled with an outside provider. *Id.* A coordinator told Bell that he could not continue to file IRRs just because he did not like the answer. *Id.* When Bell filed his complaint, he had still not received treatment. *Id.*

Bell filed a grievance at the end of March, but in April, staff told him that there was no grievance filed. *Id.* at 5. Bell's spouse, Joann Jordan, mailed him a copy of the filed grievance. *Id.* The housing unit manager responded to the grievance in May and notified Bell that he was scheduled to see an outside provider. *Id.* Bell alleges that he was retaliated against after the copy of the grievance was received at SDSP. *Id.* Mail began to take around ten days to arrive to Bell, when it previously arrived in three days. *Id.* Jordan called and spoke with an inmate manager in SDSP Unit C to file a complaint about the mail delay and lack of medical treatment. *Id.* at 6. The manager told Jordan that she could not send Bell money, visit him, or call to inquire about him. *Id.* The manager told Bell the same thing. *Id.*

Bell had asked for a grievance, but days later, he was taken to the special housing unit for multiple violations. *Id.* He was then transferred to the Hill, another unit at the SDSP. *Id.* Once Bell arrived at the Hill he was provided rejection notices informing him that a money order received from Jordan was sent back and her visiting form was denied. *Id.* at 5–6. Bell's commissary items and hygiene items were also gone, and he was unable to replace the items

4

because he did not have money on his account. *Id.* When Bell later had a hearing about the alleged violations he was charged with, all violations were dismissed, and he was to return to Unit C. *Id.* at 6.

Bell sues all defendants in their official capacities. *Id.* at 2. He claims that defendants violated his rights under the First and Eighth Amendments. *Id.* at 4–6. He seeks a court order requiring a surgical consultation and chemotherapy treatments and $2,500,000 for medical expenses. *Id.* at 7.

## II.     Legal Background

The court must assume as true all facts well pleaded in the complaint when screening. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must

5

contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory"). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The Court will now assess each individual claim under 28 U.S.C. § 1915A.

### III. Discussion

#### A. Claims Against Medical Departments

Bell alleges claims against the SDSP Jameson Annex Medical Department, the SDSP Unit C Medical Department, and the SDSP the Hill Medical Department. Doc. 1 at 2. These Medical Departments are all part of the SDSP, which is under the South Dakota Department of Corrections (SDDOC). *Id.* The SDDOC is an arm of the State of South Dakota. *See* SDCL § 1-15-1.2. The Eleventh Amendment bars suit against a state entity regardless of whether money damages or injunctive relief is sought. *Cory v. White*, 457 U.S. 85, 90–91 (1982). Thus, Bell's § 1983 claims against the SDSP Jameson Annex Medical Department, the SDSP Unit C Medical Department, and the SDSP the Hill Medical Department are dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii–iii) and 1915A(b)(1–2).

#### B. Claims Against Bittinger

##### 1. Claims for Money Damages

Bell sues Bittinger[4] in only her official capacity as Warden at the SDSP Jameson Annex. Doc. 1 at 2. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* Here, Bell seeks money damages and injunctive relief. Doc. 1 at 7. Bell's claims for money damages against Bittinger in her official capacity are equivalent to claims for money damages against the State of South Dakota. The State of South Dakota has not waived its sovereign immunity to allow Bell's official capacity claims for money damages. Thus, Bell's claims against Bittinger in her official capacity for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### 2. Claims for Injunctive Relief

Bell seeks injunctive relief to order defendants to provide him with a surgical consultation and chemotherapy treatment. Doc. 1 at 7. At the time Bell filed his complaint, he was not incarcerated at the SDSP. *See id.* at 1. He was housed at the Minnehaha County Jail, *id.*, and he has since been released from the Minnehaha County Jail, Doc. 12. The Eighth Circuit held that an "inmate's claims for declaratory and injunctive relief are moot when he is

---

[4] Bittinger is no longer employed by the SDDOC. This Court does not automatically substitute her successor under Federal Rule of Civil Procedure 25(d) because it would be futile to do so as all official capacity claims against Bittinger are dismissed during screening.

transferred to another facility and is no longer subject to alleged unlawful conditions." *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 835 (8th Cir. 2009) (citing *Pratt v. Corr. Corp. of Am.*, 267 F. App'x 482, 482 (8th Cir. 2008) (per curiam)); *see also Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (finding that an inmate's transfer to a new facility weeks before a trial for violation of his First Amendment rights mooted his claims for injunctive relief); *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978) (holding that a prisoner's claims for injunctive relief for violation of his Fourteenth Amendment rights were moot when plaintiff was transferred to a different penitentiary). Thus, Bell's claims against Bittinger in her official capacity for injunctive relief are moot and dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### MOTION FOR CHANGE OF VENUE (Doc. 11)

Bell filed a motion for a change of venue. Doc. 11. However, his request for change of venue appears to be a request to change the venue of his criminal cases in Minnehaha County. *Id.* at 2. In a § 1983 action, a district court "does not have the authority or jurisdiction . . . to direct [a state detention center] to transfer a state criminal case to another venue." *Luna v. Gentry*, 2023 WL 2583452, at *2 (W.D. Ark. Feb. 22, 2023), *R&R adopted by* 2023 WL 2777462 (W.D. Ark. Apr. 4, 2023). Further, if Bell's state criminal cases are still pending, this Court should abstain from intervening under *Younger v. Harris*, 401 U.S. 37, 46 (1971). *See also Harmon v. City of Kan. City*, 197 F.3d 321, 325 (8th Cir. 1999) (noting that federal courts should abstain under *Younger* when "the action complained of constitutes the basis of an ongoing state judicial proceeding, the proceedings implicate important state interests, and an adequate opportunity exists in the state proceedings to raise constitutional challenges"). If Bell's state cases are closed, this Court lacks subject matter jurisdiction to his challenge of a state

court judgment under the *Rooker-Feldman* doctrine. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Thus, Bell's motion for change of venue, Doc. 11, is denied.

## OTHER PENDING MOTIONS (Docs. 7, 9, and 10)

Bell filed a motion to commence (Doc. 7), a motion for summary judgment (Doc. 7), a motion to appoint counsel (Doc. 9), and a motion to proceed (Doc. 10). Because Bell's complaint is dismissed on § 1915A screening, Bell's pending motions (Docs. 7, 9, and 10) are denied as moot.

## CONCLUSION

Accordingly, it is ORDERED

1. That Bell's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

2. That Bell's § 1983 claims against the SDSP Jameson Annex Medical Department, the SDSP Unit C Medical Department, and the SDSP the Hill Medical Department are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii–iii) and 1915A(b)(1–2).

3. That Bell's claims against Bittinger in her official capacity for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

4. That Bell's claims against Bittinger in her official capacity for injunctive relief are moot and dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5. That Bell's motion for change of venue, Doc. 11, is denied.

6.  That Bell's other pending motions, Docs. 7, 9, and 10, are denied as moot.

DATED May 16, 2025.

BY THE COURT:

*Lawrence L. Piersol*
Lawrence L. Piersol
United States District Judge

10